# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EMILIANO LOPEZ, | ) 1:11-00366-LJO-SKO-HC |
| Petitioner, | ) FINDINGS AND RECOMMENDATIONS TO |
| | ) DISMISS THE PETITION WITHOUT |
| | ) LEAVE TO AMEND FOR FAILURE TO |
| v. | ) STATE COGNIZABLE CLAIMS (Doc. 1) |
| JAMES A. YATES, | ) FINDINGS AND RECOMMENDATIONS TO |
| | ) DECLINE TO ISSUE A CERTIFICATE OF |
| Respondent. | ) APPEALABILITY |
| | ) |
| _____ | ) **OBJECTIONS DEADLINE:** |
| | **THIRTY (30) DAYS** |

Petitioner is a state prisoner proceeding pro se and in forma pauperis with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  The matter has been referred to the Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1) and Local Rules 302 and 304.  Pending before the Court is the petition, which was filed on March 3, 2011.

## I.  Jurisdiction

Petitioner, an inmate of Kern Valley State Prison (KVSP) serving a sentence of three to fifteen years, challenges a prison disciplinary finding made at the prison on February 1, 2008, that Petitioner resisted staff in January 2008 in violation of Cal. Code Regs., tit. 15, §3005(c), which resulted in a forfeiture of thirty days of credit.  (Pet. 1, 42.)

1

1    Because the petition was filed after April 24, 1996, the
2  effective date of the Antiterrorism and Effective Death Penalty
3  Act of 1996 (AEDPA), the AEDPA applies in this proceeding.  Lindh
4  v. Murphy, 521 U.S. 320, 327 (1997), cert. denied, 522 U.S. 1008
5  (1997); Furman v. Wood, 190 F.3d 1002, 1004 (9th Cir. 1999).

6     A district court may entertain a petition for a writ of
7  habeas corpus by a person in custody pursuant to the judgment of
8  a state court only on the ground that the custody is in violation
9  of the Constitution, laws, or treaties of the United States.  28
10 U.S.C. §§ 2254(a), 2241(c)(3); Williams v. Taylor, 529 U.S. 362,
11 375 n.7 (2000); Wilson v. Corcoran, 562 U.S. –, –, 131 S.Ct. 13,
12 16 (2010) (per curiam).  28 U.S.C. §§ 2254(a), 2241(c)(3);
13 Williams v. Taylor, 529 U.S. 362, 375 n.7 (2000).

14    Plaintiff claims that in the course of the proceedings
15 resulting in the disciplinary finding, he suffered violations of
16 his Fourteenth Amendment right to due process of law as well as
17 his Eighth and Fourteenth Amendment right not to suffer cruel and
18 unusual punishment.  Because violations of the Constitution are
19 alleged, the Court has subject matter jurisdiction over the
20 instant petition.

21    Further, Petitioner names as Respondent James A. Yates,
22 warden of PVSP and a person who has custody of the Petitioner
23 within the meaning of 28 U.S.C. § 2242 and Rule 2(a) of the Rules
24 Governing § 2254 Cases in the United States District Courts
25 (Habeas Rules).  See, Stanley v. California Supreme Court, 21
26 F.3d 359, 360 (9th Cir. 1994).

27    Accordingly, this Court has jurisdiction over this action
28 and over Respondent Yates.

1        II.   <u>Screening the Petition</u>

2        Habeas Rule 4 requires the Court to make a preliminary

3   review of each petition for writ of habeas corpus. The Court must

4   summarily dismiss a petition "[i]f it plainly appears from the

5   petition and any attached exhibits that the petitioner is not

6   entitled to relief in the district court...." Habeas Rule 4;

7   <u>O'Bremski v. Maass</u>, 915 F.2d 418, 420 (9th Cir. 1990); <u>see also</u>

8   <u>Hendricks v. Vasquez</u>, 908 F.2d 490 (9th Cir. 1990).  Habeas Rule

9   2(c) requires that a petition 1) specify all grounds of relief

10  available to the Petitioner; 2) state the facts supporting each

11  ground; and 3) state the relief requested.  Notice pleading is

12  not sufficient; rather, the petition must state facts that point

13  to a real possibility of constitutional error.  Rule 4, Advisory

14  Committee Notes, 1976 Adoption; <u>O'Bremski v. Maass</u>, 915 F.2d at

15  420 (quoting <u>Blackledge v. Allison</u>, 431 U.S. 63, 75 n. 7 (1977)).

16  Allegations in a petition that are vague, conclusory, or palpably

17  incredible are subject to summary dismissal.  <u>Hendricks v.</u>

18  <u>Vasquez</u>, 908 F.2d 490, 491 (9th Cir. 1990).

19       Further, the Court may dismiss a petition for writ of habeas

20  corpus either on its own motion under Habeas Rule 4, pursuant to

21  the respondent's motion to dismiss, or after an answer to the

22  petition has been filed.  Advisory Committee Notes to Habeas Rule

23  8, 1976 Adoption; <u>see</u>, <u>Herbst v. Cook</u>, 260 F.3d 1039, 1042-43

24  (9th Cir. 2001).

25       Petitioner raises the following claims in the petition:

26  1) the failure of the disciplinary hearing officer to permit

27  Petitioner to call and confront witnesses and to present

28  documentary evidence violated Petitioner's right to due process

3

of law; 2) Officer Hamner's falsification of evidence to make it appear that Petitioner committed a rules violation violated Petitioner's right to be free from cruel and unusual punishment; and 3) the failure of prison authorities to process Petitioner's appeal and complaint against the prison guard denied Petitioner access to the courts and Petitioner's Fourteenth Amendment right to due process of law.

A review of the petition demonstrates that Petitioner has included apparently complete documentation of the challenged disciplinary proceedings and Petitioner's exhaustion of the administrative remedies available to Petitioner within the CDCR. (Pet. 1-63.)

Petitioner claimed in the disciplinary proceedings and alleges in the petition that he did not interfere with staff, and that staff used excessive force against him in the pertinent encounter. Other than Petitioner's denial that he engaged in the prohibited conduct, there do not appear to be any disputed material facts with respect to the disciplinary proceedings or the evidence underlying the finding that Petitioner interfered with staff.

Accordingly, the Court will proceed to determine whether Petitioner's allegations state a cognizable claim for habeas corpus relief.

III.   <u>Factual Allegations</u>

In a rules violation report dated January 6, 2008, Correctional Officer T. Hamner reported that after taking a shower on January 1, 2008, Petitioner returned to his cell but left the cell door open, as he frequently did. Hamner ordered

4

Petitioner to close his door three times without any result. Because another correctional officer was at a distance, Hamner approached the cell to close the cell door.

When Hamner reached a stairwell, Petitioner walked toward it, ignored another direction from Hamner to lock up, and quickly descended half the staircase, meeting Hamner and blocking Hamner's safe progress upwards.  From a distance of about two feet from the officer, Petitioner ignored another order from Hamner to return to his cell and get off the stairs.  Hamner grabbed Petitioner's right bicep, turned Petitioner to his left so he was facing away from the officer, and used both hands to control Petitioner as Hamner proceeded down the stairs. Petitioner resisted by leaning back and using his weight to push toward the officer.  (Pet. 42.)

Petitioner surrendered one hand in response to an order to submit to handcuffs but then resisted, causing Officer A. Martinez in the control booth to activate a personal alarm. Hamner put his right hand around Petitioner's right shoulder, spinned Petitioner to his right, and placed him on his stomach while maintaining control of his left hand.  Hamner ultimately placed Petitioner in handcuffs.  (Pet. 46.)

A signed report reflects that Petitioner was given a copy of the rules violation report (CDC 115) on January 10, 2008.  (Pet. 43.)  Petitioner pled not guilty. (Pet. 42.)

A staff assistant was not assigned; however, Petitioner was assigned an investigative employee (IE) – Correctional Officer D. Cardenas.  Cardenas reported that on January 10, 2008, he interviewed Petitioner, who stated that he did not object to

Cardenas' serving as his IE.  Cardenas stated that Petitioner
gave him three questions to ask witnesses (inquiries concerning
whether Petitioner had resisted, how Officer Hamner handled the
situation, and whether Petitioner appeared hostile and
disrespectful). (Pet. 46.)  However, Petitioner was unable to
provide the IE with the names, CDC numbers, and housing of his
witnesses; therefore, Cardenas was unable to question anyone.
(Pet. 46.)  Cardenas further reported that Petitioner told
Cardenas that he did not resist the officer.  There were no
statements of inmate or staff witnesses.  Petitioner did not
request any evidence, information, or witnesses for the hearing,
and he did not request that the reporting employee or IE appear.
(Pet. 44.)  A copy of Cardenas' report was given to Petitioner
before the hearing along with a crime/incident report and a
medical report of injury.  (Pet. 44-45.)

     The signed report of Senior Hearing Officer (SHO) D. B.
Petrick reflects that on February 1, 2008, Petrick held the
adjudication hearing, which Petitioner attended.  (Pet. 45.)
SHO Petrick reported that Petitioner did not request any
witnesses on the CDC 115A, IE report, or during the hearing;
further, the SHO did not require the presence of any witnesses.
(Pet. 45.)  Petitioner did not request any additional evidence or
information during the hearing. (Pet. 47.)

     Petitioner submitted a written statement at the hearing
which was copied into the hearing officer's report.  (Pet. 47.)
Petitioner explained that he had approached the podium area by
the stairs to speak to Hamner, who Petitioner thought had via
hand gestures authorized Petitioner's movement.  Hamner suddenly

grabbed Petitioner, pulled him down the stairs, shoved him into a locker, slammed him to the ground without warning, and cuffed him.  (Pet. 47.)

The SHO found Petitioner guilty of resisting staff by a preponderance of evidence consisting of 1) Officer Hamner's rules violation report; 2) the report of Officer Martinez, who on the day in question activated an alarm at Hamner's request, and observed Hamner point to Petitioner to go back up the stairs to his cell, Petitioner's subsequent refusal, Officer Hamner's efforts to cuff Petitioner by grabbing Petitioner's left arm and ordering him to cuff up, Petitioner's refusal, Officer Hamner's direction to Martinez to activate the alarm, and Petitioner's subsequent resistance to handcuffing (pet. 48, 56); and 3) the report of Officer Espino, who responded to the alarm activated by Officer Martinez, saw Petitioner on the ground, and escorted Petitioner to a holding cell for medical evaluation and interview (pet. 48, 54).  (Pet. 48-49.)  The SHO also relied on the fact that in his written statement, Petitioner admitted to not closing his cell door and meeting Hamner on the stairs, but claimed to have submitted to Hamner.  (Pet. 49.)  The SHO further relied on a medical report of medical staff reflecting that upon examination of Petitioner after the incident, no injuries were observed.  (Pet. 49, 57.)

Petitioner was given a copy of the hearing officer's report and findings (CDC-115C) on February 13, 2008.  (Pet. 47.)

///

///

///

7

1        IV.   <u>Legal Standards</u>

2        With respect to prison disciplinary proceedings, procedural

3   due process of law requires that where the state has made good

4   time subject to forfeiture only for serious misbehavior,

5   prisoners subject to a loss of good-time credits must be given

6   advance written notice of the claimed violation, a right to call

7   witnesses and present documentary evidence where it would not be

8   unduly hazardous to institutional safety or correctional goals,

9   and a written statement of the finder of fact as to the evidence

10  relied upon and the reasons for disciplinary action taken.  <u>Wolff</u>

11  <u>v. McDonnell</u>, 418 U.S. 539, 563-64 (1974).  Confrontation, cross-

12  examination, and counsel are not required.  <u>Wolff</u>, 418 U.S. at

13  568-70.

14       Further, where good-time credits are a protected liberty

15  interest, the decision to revoke credits must be supported by

16  some evidence in the record.  <u>Superintendent v. Hill</u>, 472 U.S.

17  445, 454 (1985).  The Court in <u>Hill</u> stated:

18       We hold that the requirements of due process are
         satisfied if some evidence supports the decision by the
19       prison disciplinary board to revoke good time credits.
         This standard is met if "there was some evidence from
20       which the conclusion of the administrative tribunal
         could be deduced...." <u>United States ex rel. Vajtauer v.</u>
21       <u>Commissioner of Immigration</u>, 273 U.S., at 106, 47
         S.Ct., at 304. Ascertaining whether this standard is
22       satisfied does not require examination of the entire
         record, independent assessment of the credibility of
23       witnesses, or weighing of the evidence. Instead, the
         relevant question is whether there is any evidence in
24       the record that could support the conclusion reached by
         the disciplinary board. See <u>ibid.</u>; <u>United States ex</u>
25       <u>rel. Tisi v. Tod</u>, 264 U.S. 131, 133-134, 44 S.Ct. 260,
         260-261, 68 L.Ed. 590 (1924); <u>Willis v. Ciccone</u>, 506
26       F.2d 1011, 1018 (CA8 1974).

27  <u>Superintendent v. Hill</u>, 472 U.S. at 455-56.  The Constitution

28  does not require that the evidence logically preclude any

                                    8

1  conclusion other than the conclusion reached by the disciplinary

2  board; rather, there need only be some evidence in order to

3  ensure that there was some basis in fact for the decision.

4  Superintendent v. Hill, 472 U.S. at 457.

5      V.   Analysis of the Due Process Claims

6           A.   Some Evidence to Support the Finding

7      With respect to the requirement that some evidence support

8  the finding that Petitioner resisted staff, this Court does not

9  make its own assessment of the credibility of witnesses or re-

10  weigh the evidence.  The Court must ascertain, however, that the

11  evidence has some indicia of reliability and, even if meager,

12  "not so devoid of evidence that the findings of the disciplinary

13  board were without support or otherwise arbitrary." Cato v.

14  Rushen, 824 F.2d 703, 704-05 (9th Cir. 1987) (quoting

15  Superintendent v. Hill, 472 U.S. 445, 457 (1985)).

16      In Cato v. Rushen, 824 F.2d at 705, the Court found that the

17  Hill standard was not satisfied where the only evidence

18  implicating the inmate was another inmate's statement that was

19  related to prison officials through a confidential informant who

20  had no first-hand knowledge of any relevant statements or actions

21  by the inmate being disciplined, and whose polygraph results were

22  inconclusive.  In contrast, evidence evaluated and found to

23  constitute "some evidence" supportive of various findings has

24  included the report of a prison guard who saw several inmates

25  fleeing an area after an assault on another inmate when no other

26  inmates were in the area, Superintendent v. Hill, 472 U.S. 456-

27  57; the statement of a guard that the inmate had admitted a theft

28  to supplement his income, coupled with corroborating evidence,

9

1  Bostic v. Carlson, 884 F.2d 1267, 1270 (9th Cir. 1989); an
2  inmate's admission and corroborating, circumstantial evidence,
3  Crane v. Evans, 2009 WL 148273, *3 (N.D.Cal. Feb. 2, 2009); and
4  an inmate's admission of having engaged in the violation plus an
5  officer's report of having heard a recording of the offending
6  conversation, Dawson v. Norwood, 2010 WL 761226, *1 (C.D.Cal.
7  March 1, 2010).

8      The Court has reviewed the allegations of the petition and
9  the documentation provided by Petitioner in support of the
10 petition and concludes that the finding of resistance to staff
11 was supported by some evidence, including Officer Hamner's report
12 based on personal knowledge, the IE report, the confirming
13 reports of Martinez, Espino, and the medical staff, and portions
14 of Petitioner's own written statement.

15     Accordingly, with respect to his claim concerning a lack of
16 some evidence to support the disciplinary finding, Petitioner has
17 failed to allege facts that point to a due process violation.
18 Thus, the claim must be dismissed.

19     A petition for habeas corpus should not be dismissed without
20 leave to amend unless it appears that no tenable claim for relief
21 can be pleaded were such leave granted.  Jarvis v. Nelson, 440
22 F.2d 13, 14 (9th Cir. 1971).

23     Because full documentation of the disciplinary proceedings
24 has been submitted to the Court, it does not appear that
25 Petitioner could state a tenable due process claim if leave to
26 amend were granted.  Accordingly, it will be recommended that the
27 due process claim concerning the absence of supporting evidence
28 be dismissed without leave to amend.

B. <u>Failure to Permit Testimony of Witnesses and Documentary Evidence</u>

Federal habeas relief is available to state prisoners only to correct violations of the United States Constitution, federal laws, or treaties of the United States.  28 U.S.C. § 2254(a).  Federal habeas relief is not available to retry a state issue that does not rise to the level of a federal constitutional violation.  <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991).  Alleged errors in the application of state law are not cognizable in federal habeas corpus.  <u>Souch v. Schiavo</u>, 289 F.3d 616, 623 (9th Cir. 2002).

To the extent that Petitioner claims an absence of compliance with California's regulatory laws governing prison disciplinary procedures, Petitioner's claims relating to evidence and witnesses at the disciplinary hearing are premised upon state law and therefore would not entitle Petitioner to federal habeas corpus relief.  Thus, such claims are not cognizable and should be dismissed without leave to amend.

With respect to a federal claim concerning calling witnesses and putting on documentary evidence, Petitioner has a right to do so where it would not be unduly hazardous to institutional safety or correctional goals.  <u>Wolff v. McDonnell</u>, 418 U.S. 539, 563-64 (1974).  However, confrontation and cross-examination are not required.  <u>Wolff</u>, 418 U.S. at 568-70.

With respect to being prohibited from calling witnesses, the investigative employee reported that although Petitioner gave him questions to ask the witnesses, Petitioner did not have the names, identification numbers, or housing information of the

11

witnesses.  It does not appear that Petitioner gave the IE any
additional information that would help identify the persons
claimed to be witnesses. (Pet. 42, 46.)  Petitioner did not
request any other evidence or information or give any indication
that additional evidence was required before a hearing should
occur. (Pet. 44.)  Thus, it does not appear that at the time of
the investigation, Petitioner objected to the investigation,
offered any information that would have made any further
investigation possible, or otherwise facilitated discovery of any
further information.

Further, part C of the rules violation report in which SHO
Petrick reported the hearing held on February 1, 2008, reflects
that Petitioner did not request any witnesses on the CDC 115A,
the IE report, or during the hearing. (Pet. 45.)  He did not
request any additional evidence or information during the
hearing. (Pet. 47.)  Petitioner was allowed to submit a detailed
written statement. (Pet. 47.)  However, there is no indication
that Petitioner complained concerning the investigation, sought
any further investigation, or set forth any data regarding the
alleged witnesses.

On an inmate appeal form submitted by Petitioner on February
21, 2008, several weeks after the hearing was held, Petitioner
stated that after his time in administrative segregation and a
move to a different building, he was able during normal
programming to get the names and numbers of witnesses.
Petitioner set forth on the appeal form five names of persons who
appear to be prisoners because they have prison identification
numbers. (Pet. 32.)  He also set forth the names of correctional

12

1  officers Hamner and Martinez.

2      However, Petitioner did not provide any information
3  regarding the precise testimony of the witnesses.  Petitioner
4  alleges generally that the witnesses would have been able to
5  testify that Petitioner was the one assaulted by the reporting
6  employee, and that Petitioner remained passive throughout the
7  incident.  (Pet. 6-7.)  It is unclear what part of the pertinent
8  events were observed, where the alleged witnesses were when they
9  allegedly observed some of the events, or what the actual
10 observations were.  Although Petitioner listed Hamner and
11 Martinez as witnesses on his appeal form, the mere listing of the
12 witnesses does not indicate what the testimony would be or
13 otherwise provide an adequate substitute for such information.

14     Such generalized allegations are not sufficient to show a
15 violation of due process of law because notice pleading is not
16 sufficient; rather, the petition must state facts that point to a
17 real possibility of constitutional error.  Habeas Rule 4,
18 Advisory Committee Notes, 1976 Adoption; O'Bremski v. Maass, 915
19 F.2d at 420 (quoting Blackledge v. Allison, 431 U.S. 63, 75 n. 7
20 (1977)).  Allegations in a petition that are vague, conclusory,
21 or palpably incredible are subject to summary dismissal.
22 Hendricks v. Vasquez, 908 F.2d 490, 491 (9th Cir. 1990).

23     Here, Petitioner has not shown that any of the witnesses
24 would have presented any specific, helpful or exculpatory
25 evidence.  Therefore, Petitioner has not shown any prejudicial
26 denial of due process.  Cf., Brecht v. Abrahamson, 507 U.S. 619,
27 637 (1993) (determining that habeas relief is warranted when an
28 error resulted in actual prejudice, or had a substantial and

13

1  injurious effect or influence in determining the jury's verdict);

2  Schenck v. Edwards, 921 F.Supp. 679, 687-88 (E.D.Wash. 1996).

3      With respect to documentary evidence, Petitioner argues that

4  there were conflicting statements in Officer Hamner's

5  disciplinary report (CDC-115) and a placement notice from J. E.

6  Daley issued in connection with petitioner's housing transfer

7  that was precipitated by the incident (CDC 114-D).

8      A review of the housing placement notice (pet. 18) reflects

9  a version of the events that is generally and substantially

10  consistent with Hamner's rules violation report.  Lt. J. E. Daley

11  reported that the circumstances requiring placement in

12  administrative segregation involved Petitioner's failure to

13  return to his cell and lock up, and the report chronicled Officer

14  Hamner's instructions to Petitioner to return to his cell,

15  Petitioner's attempt to block Hamner as he was in route to

16  Petitioner's location, the need for Hamner to grab Petitioner's

17  left arm, Petitioner's apparent resistance by spinning around,

18  Hamner's restraining Petitioner and escorting him down the stairs

19  to the podium, and Petitioner's being forced to the ground and

20  being cuffed.  (Pet. 18.)

21      Because the information in the placement notice was

22  essentially consistent with the correctional staff's observations

23  of the pertinent events, any failure to produce such evidence at

24  the hearing was not harmful to Petitioner.

25      Petitioner also contends that his own statement and

26  allegations of fact establish that he did not resist Hamner, and

27  the officer used excessive force.  However, Petitioner's

28  arguments are essentially an invitation to this Court to re-weigh

the evidence, which is not within the scope of this Court's review.

The Court concludes that Petitioner has failed to state facts showing that he is entitled to habeas relief. Petitioner's claims concerning witnesses and documentary evidence are not cognizable in a proceeding pursuant to 28 U.S.C. § 2254.

Further, because full documentation of the disciplinary proceedings has been provided to the Court, it does not appear that Petitioner could amend the petition to state facts that would entitle him to relief. Therefore, the claims should be dismissed without leave to amend.

VI. <u>Cruel and Unusual Punishment</u>

Petitioner argues that Officer Hamner falsified evidence to make it appear that Petitioner had committed a rule violation. Petitioner argues that the allegations are false as shown by the allegedly contradictory statements made in the housing placement notice. Petitioner alleges that this violates his right to be free from cruel and unusual punishment because it will result in years of imprisonment by the Board of Parole Hearings at an unspecified time or place. (Pet. 8-9.)

It appears that the thirty-day loss of credit is the only consequence of the disciplinary finding alleged by Petitioner because Petitioner's placement in administrative segregation was followed by an immediate determination that Petitioner was cleared to go back to the general population. (Pet. 8.)

It is established that there is no right under the Federal Constitution to be conditionally released before the expiration of a valid sentence, and the states are under no duty to offer

1  parole to their prisoners.  Swarthout v. Cooke, 562 U.S. –, 131

2  S.Ct. 859, 862 (2011).  A criminal sentence that is "grossly

3  disproportionate" to the crime for which a defendant is convicted

4  may violate the Eighth Amendment.  Lockyer v. Andrade, 538 U.S.

5  63, 72 (2003); Harmelin v. Michigan, 501 U.S. 957, 1001 (1991)

6  (Kennedy, J., concurring); Rummel v. Estelle, 445 U.S. 263, 271

7  (1980).  Outside of the capital punishment context, the Eighth

8  Amendment prohibits only sentences that are extreme and grossly

9  disproportionate to the crime.  United States v. Bland, 961 F.2d

10 123, 129 (9th Cir. 1992) (quoting Harmelin v. Michigan, 501 U.S.

11 957, 1001, (1991) (Kennedy, J., concurring)).  Such instances are

12 "exceedingly rare" and occur in only "extreme" cases.  Lockyer v.

13 Andrade, 538 U.S. at 72-73; Rummel, 445 U.S. at 272.  So long as

14 a sentence does not exceed the statutory maximum, it will not be

15 considered cruel and unusual punishment under the Eighth

16 Amendment.  See United States v. Mejia-Mesa, 153 F.3d 925, 930

17 (9th Cir.1998); United States v. McDougherty, 920 F.2d 569, 576

18 (9th Cir. 1990).

19     Here, Petitioner has not alleged the nature of his

20 commitment offense; it is not even clear whether Petitioner's

21 sentence is determinate or indeterminate because the only

22 information given on the length of his sentence is "3 to 15

23 years."  (Pet. 1.)  Petitioner's parole status is unclear; he

24 simply alleges that at some time in the future, he will spend

25 more time in prison due to the disciplinary finding.

26     Petitioner thus has not alleged facts showing that any

27 disciplinary penalty, or any increased time spent in prison as a

28 result of his disciplinary offense, constitutes a grossly

1    disproportionate sentence.  Petitioner has not alleged facts

2    pointing to a real possibility of Eighth and Fourteenth Amendment

3    error.

4        Further, considering the extreme facts that must be present

5    for an Eighth Amendment claim to be stated, it does not appear

6    that Petitioner could state a tenable claim of cruel and unusual

7    punishment under the Eighth and Fourteenth Amendments.  Thus,

8    Petitioner's claim should be dismissed without leave to amend.

9        VII.  <u>Failure to Process the Administrative Appeal</u>

10        Petitioner argues that the California Department of

11   Corrections and Rehabilitation (CDCR) erroneously failed to

12   respond to his administrative appeal or staff complaint against

13   Officer Hamner for cruelty, thereby violating his right to due

14   process of law. Petitioner also argues that state statutes and

15   regulations were ignored by the prison authorities, and the state

16   court decisions denying relief were incorrect and in violation of

17   his right to due process of law.  (Pet. 10-11.)

18        Federal habeas relief is not available in proceedings

19   pursuant to 28 U.S.C. § 2254 to retry a state issue that does not

20   rise to the level of a federal constitutional violation.  <u>Wilson</u>

21   <u>v. Corcoran</u>, 562 U.S. — , 131 S.Ct. 13, 16 (2010); <u>Estelle v.</u>

22   <u>McGuire</u>, 502 U.S. 62, 67-68 (1991).  Alleged errors in the

23   application of state law are not cognizable in federal habeas

24   corpus.  <u>Souch v. Schiavo</u>, 289 F.3d 616, 623 (9th Cir. 2002).

25        Thus, it is established that federal habeas relief is not

26   available to redress procedural errors in the state collateral

27   review process.  <u>Ortiz v. Stewart</u>, 149 F.3d 923, 939 (9th Cir.

28   1998) (claim concerning the alleged bias of a judge in a second

post-conviction proceeding for relief);   Carriger v. Stewart, 95
F.3d 755, 763 (9th Cir. 1996), vacated on other grounds, Carriger
v. Stewart, 132 F.3d 463 (1997) (Brady claim in post-conviction
proceedings); Franzen v. Brinkman, 877 F.2d 26, 26 (9th Cir.
1989) (claim that a state court's delay in deciding a petition
for post-conviction relief violated due process rights).

The Court concludes that to the extent that Petitioner's due
process claim is not duplicative of his previously analyzed
claims, Petitioner's claim concerning the administrative appeal
fails to state a claim cognizable in a proceeding pursuant to 28
U.S.C. § 2254.   Petitioner's claim should be dismissed without
leave to amend.

Petitioner alleges denial of access to the courts and
excessive force in his third claim.   (Pet. 10-11.)   These aspects
of the allegations are unclear and uncertain.   It is possible
that Petitioner is alleging that he was denied access to the
courts and/or that Officer Hamner used excessive force against
him, and is, therefore, seeking relief for those allegations.

A federal court may only grant a state prisoner's petition
for writ of habeas corpus if the petitioner can show that "he is
in custody in violation of the Constitution or laws or treaties
of the United States."   28 U.S.C. § 2254(a).   A habeas corpus
petition is the correct method for a prisoner to challenge the
legality or duration of his confinement.   Badea v. Cox, 931 F.2d
573, 574 (9th Cir. 1991) (quoting Preiser v. Rodriquez, 411 U.S.
475, 485 (1973)); Advisory Committee Notes to Habeas Rule 1, 1976
Adoption.

///

1    In contrast, a civil rights action pursuant to 42 U.S.C.
2 § 1983 is the proper method for a prisoner to challenge the
3 conditions of that confinement.  McCarthy v. Bronson, 500 U.S.
4 136, 141-42 (1991); Preiser, 411 U.S. at 499; Badea, 931 F.2d at
5 574; Advisory Committee Notes to Habeas Rule 1, 1976 Adoption.
6    To the extent that Petitioner complains of excessive force
7 or denial of access to the courts, Petitioner is complaining of
8 the conditions of confinement and not the legality or duration of
9 his confinement.  Such claims are not cognizable in this
10 proceeding.  Accordingly, to the extent that Petitioner seeks to
11 raise such claims in this proceeding, they must be dismissed
12 without leave to amend.  Petitioner may raise such claims in a
13 separate civil rights suit pursuant to 42 U.S.C. § 1983.
14    In summary, Petitioner fails to state a claim cognizable in
15 a proceeding pursuant to 28 U.S.C. § 2254.  Further, it does not
16 appear that Petitioner could state a cognizable claim if given
17 leave to amend.
18    Accordingly, it will be recommended that the petition be
19 dismissed without leave to amend.
20    VIII.  Certificate of Appealability
21    Unless a circuit justice or judge issues a certificate of
22 appealability, an appeal may not be taken to the court of appeals
23 from the final order in a habeas proceeding in which the
24 detention complained of arises out of process issued by a state
25 court.  28 U.S.C. § 2253(c)(1)(A); Miller-El v. Cockrell, 537
26 U.S. 322, 336 (2003).  A certificate of appealability may issue
27 only if the applicant makes a substantial showing of the denial
28 of a constitutional right.  § 2253(c)(2).  Under this standard, a

petitioner must show that reasonable jurists could debate whether the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further.  Miller-El v. Cockrell, 537 U.S. at 336 (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)).  A certificate should issue if the Petitioner shows that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in any procedural ruling.  Slack v. McDaniel, 529 U.S. 473, 483-84 (2000).

In determining this issue, a court conducts an overview of the claims in the habeas petition, generally assesses their merits, and determines whether the resolution was debatable among jurists of reason or wrong.  Id.  It is necessary for an applicant to show more than an absence of frivolity or the existence of mere good faith; however, it is not necessary for an applicant to show that the appeal will succeed.  Miller-El v. Cockrell, 537 U.S. at 338.

A district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.  Rule 11(a) of the Rules Governing Section 2254 Cases.

Here, it does not appear that reasonable jurists could debate whether the petition should have been resolved in a different manner.  Petitioner has not made a substantial showing of the denial of a constitutional right.  Accordingly, the Court should decline to issue a certificate of appealability.
///

1    IX.    Recommendations

2        Accordingly, it is RECOMMENDED that:

3        1)    The petition be DISMISSED for failure to state a claim

4    cognizable in a proceeding pursuant to 28 U.S.C. § 2254; and

5        2)    The Court DECLINE to issue a certificate of

6    appealability; and

7        3)    The Clerk be DIRECTED to close the action because

8    dismissal will terminate the case.

9        These findings and recommendations are submitted to the

10   United States District Court Judge assigned to the case, pursuant

11   to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of

12   the Local Rules of Practice for the United States District Court,

13   Eastern District of California. Within thirty (30) days after

14   being served with a copy, any party may file written objections

15   with the Court and serve a copy on all parties. Such a document

16   should be captioned "Objections to Magistrate Judge's Findings

17   and Recommendations." Replies to the objections shall be served

18   and filed within fourteen (14) days (plus three (3) days if

19   served by mail) after service of the objections. The Court will

20   then review the Magistrate Judge's ruling pursuant to 28 U.S.C. §

21   636 (b)(1)(C). The parties are advised that failure to file

22   objections within the specified time may waive the right to

23   appeal the District Court's order. Martinez v. Ylst, 951 F.2d

24   1153 (9th Cir. 1991).

25   IT IS SO ORDERED.

26   **Dated:    March 18, 2011**            **/s/ Sheila K. Oberto**
                                          UNITED STATES MAGISTRATE JUDGE

27

28